IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA L. BOUCHER,

        Plaintiff,

        vs.                                 Case No. 08-1070-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Amanda Boucher has applied for Social Security disability benefits. Her application was denied by the ALJ on July 5, 2007, a decision affirmed by the Appeals Council on January 8, 2008. There are two allegations of error by Boucher: 1) that the ALJ erroneously determined Boucher's residual functional capacity (RFC); and 2) that the ALJ erred in determining that she could perform other work at step 5.

Plaintiff-claimant Boucher was born in May, 1962. She has previously worked as a bartender, waitress, restaurant manager, and in a siding factory. She has stated that she became disabled beginning May 10, 2003, due to pain and swelling in her collar bone and shoulder. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 16-26), and set forth *seriatim* in the argument sections of the briefs submitted by Bocuher (Dkt. No. 10, at 4-23) and of the Commissioner's response (Dkt. No. 15, at 3-9).

The Commissioner determines whether an applicant is disabled through a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the burden of proof in the first three steps: she must show whether she is engaged in substantial gainful activity, she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court

with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Here, the ALJ determined that Boucher was severely impaired due to chronic pain syndrome, osteoarthritis, right shoulder impingement, hypertension, irritable bowel syndrome, and hypothyroidism. She suffered from additional nonsevere impairments which included a right knee disorder and a depressive disorder. She did not have any impairment or combination of impairments which would have equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Boucher retained the RFC to perform

> sedentary work, or work which requires lifting up to 10 pounds on an occasional basis, but lifting no more than nominal weight on a frequent basis, sitting up to 6 hours of an 8-hour day, and standing and/or walking up to 2 hours of an 8-hour day. The claimant has nonexertional limitations precluding more than occasional reaching, handling, or fingering with the right upper extremity due to her shoulder impingement and cervicalgia. The claimant must avoid exposure to temperature and humidity extremes. She must also avoid exposure to vibration and to work hazards such as unprotected heights or being around dangerous moving machinery due to medication side effects.

(Tr. 20). As a result, the ALJ found, Boucher could not return to her past work, but she could perform other work in the national economy, such as charge account clerk or call out operator. (Tr. 26).

In arguing that the ALJ erred in reaching this RFC, Boucher sequentially identifies statements from the ALJ's analysis which she contends misrepresent the medical record. The court has carefully reviewed the medical and evidentiary record and finds no error in the ALJ's opinion.

The ALJ gave only limited effect to a GAF score of 55 assigned by psychologist Dr. Joseph Hertzler, stating that the score largely reflected Axis IV social and occupational factors, and further

3

was out of step with the "essentially normal" other findings. (Tr. 19). While the plaintiff challenges this conclusion, it is fairly grounded in the evidence, including Dr. Hertzler's observation that Boucher appeared to have "at least average intelligence," and who had "a very troubled personal history" but was "responsive to medication so far." (Tr. 275). Similarly, Dr. Stevens had noted in November of 2003, that Boucher's "pain complaints really are not in conjunction with the actual physical findings and limitations that I can see on examination." (Tr. 167).

The ALJ also stated in his opinion that Dr. Ronald Stevens, M.D., had noted that Boucher's symptoms appeared to be "vague and difficult to describe." (Tr. 22). Boucher argues that this characterization was unfair, since the symptoms were nevertheless real. While this may be true, it was not error for the ALJ to accurately cite observations from Dr. Stevens's April 13, 2005 notes that Boucher presented with "[v]ague symptom, which are difficult to describe." (Tr. 151). Boucher reported "feeling bloated" with a "slight headache," but "otherwise feels well." (*Id.*) The reference to a vague presentation of symptoms appears in the ALJ's discussion of the credibility of Boucher's subjective description of her conditions, which the ALJ generally found was limited.

The ALJ noted that Boucher's hyperthyroid condition appeared to be successfully controlled with medication, and that her problems with fatigue, which began in 2003, had improved by 2006. The plaintiff contends that this observation misrepresented the record, citing to various portions of the record indicating that fatigue was a continuing problem. However, much of this evidence comes from 2005, and the ALJ's observation is a correct reflection of the October, 2006 report by Dr. Joseph Luinstra, M.D. that Boucher "denies excessive fatigue." In her brief, Boucher speculates that this denial of fatigue was related only to her knee (she was seeing Dr. Luinstra specifically in reference to problems with her right knee). The court finds that the ALJ correctly referenced the

4

record. Dr. Luinstra's notes segregate specific findings as to Boucher's knee in one section of his report. The statement as to the lack of fatigue appears in a separate, general section of the report which is titled "Constitutional" and also includes observations that Boucher denied "change in appetite, weight loss, or diet change." (Tr. 282). These reflect Boucher's statements as to her general physical condition, not matters specifically tied to her knee problem, and the ALJ appropriately referenced them in his conclusions as to Boucher's credibility.

The ALJ generally found that Boucher's credibility was limited. He first noted the general evidence showing successful treatment by medication.

> The claimant is able to drive, do household, cooking, and self care chores, read, shop, and visit. While she credibly avoids heavy lifting and repeated right hand use, she is able to accomplish most daily activities. She utilizes Synthroid for her thyroid problem, Lortabs for pain, Amitriptyline for pain and sleep, and Cymbalta for depression and pain. She also uses over the counter Ibuprofen 600 mg. 3 to 4 times a day. She [has reported] that Amitriptyline enables her to sleep [and] that her medications were working fairly well. Orthopedic surgeon Vello Kass, M.D., described the claimant's pain syndrome as mild. Arnitabh Goel, M.D., noted on March 24, 2004 that the claimant's pain was fairly well controlled. Dr. Kass confirmed on June 22, 2004 that the claimant was doing fairly well on her current medications. Although the claimant credibly experienced intermittent exacerbations of pain, these appeared to resolve within short periods of time. The claimant's testimony of constant severe pain is not consistent with her reports to medical sources, which indicate that overall her pain levels are under fairly good control with her current medication regime.

(Tr. 21. Record citations omitted).

In addition to the contradiction regarding the presence of fatigue and successful treatment of her symptoms by medication, the ALJ also noted other inconsistencies, including an absence of swelling "with even the most minimal of activity" as claimed by Boucher. (Tr. 22). Further, there was evidence in the record showing inconsistent performance during exertional testing. (*Id.*)

> The claimant's testimony of inability to sleep more than 2 hours a night due to pain is contradicted by her report to the FCE physical therapist that she woke up an

>average of twice a night and was usually able to return to sleep within an hour. Her testimony of inability to drive more than short distances is contradicted by her report to the FCE therapist of unlimited driving using the left arm. She also told the FCE therapist that she could lift up to 20 pounds, sit and stand for unlimited amounts of time, and walk up to 10 minutes at a time.
>
>Although the claimant reported difficulty walking due to low back pain and problems with arm movements, medical records have consistently documented her normal gait with normal stance and swing phase. Spinal examination findings remained negative except for subjective reports of pain even after the claimant's reported back pain, until the claimant injured her knee and ankle. There is no examination evidence of significant upper or lower extremity weakness.

(Tr. 22. Record citations omitted).

Boucher argues that the medical evidence actually shows the existence of swelling associated with collarbone pain, and that any problems with her performance during the exertional testing was a manifestation of her chronic pain syndrome. However, the September 24, 2002 report merely indicates that Boucher "has had trouble with swelling" in the previous six to eight months. (Tr. 187-88). The report does not substantially contradict the ALJ's observation that swelling was not documented in subsequent visits in 2003, 2005, and 2006. As the ALJ noted, the medical evidence suggested that Boucher's pain syndrome was mild and controlled by medication. (Tr. 229). The ALJ did not err in this facet of his credibility analysis.

Reviewing the evidence from medical sources, the ALJ observed that none of the treating medical sources had concluded that Boucher was disabled, although Dr. Vello Kass had stated in 2003 that she should not work more than four to six hours per day. The ALJ noted that this conclusion was based on Boucher's subjective statements, and that "surgical findings have been essentially negative." (Tr. 22). Dr. Kass later stated that Boucher could "do sedentary work, such as working with computers, reception, or sales, that did not require heavy lifting or repetitive overhead work." (Tr. 23).

The ALJ's decision to accord controlling weight to Dr. Kass's recommendation that Boucher not work full time was not error. While plaintiff points to some evidence in the record showing continuing reports of pain after surgery (Tr. 216-17, 260, 288-89), the ALJ's finding was that there were *essentially* negative physical findings after the surgery, and this is a fair summary of the medical evidence. The ALJ correctly noted that the opinion by Dr. Kass restricting her to part-time work is not otherwise corroborated by other medical sources, was grounded on the subjective statements of a claimant who has otherwise been found to be less than fully credible, and was premised on an observation – that full-time work "seems to stress her too much" (Tr. 162) – which was a psychological conclusion outside the orthopedic surgeon's expertise. Boucher suggests that the stress referenced in Dr. Kass's letter was physical stress, and thus within his area of expertise. Read in context, the stress in the report appears to be psychological in nature, with Dr. Kass deferring to conclusions offered by the pain specialist Dr. Goel. The court concludes that, in light of all of the evidence, the ALJ did not error in declining to give controlling weight to all facets of Dr. Kass's recommendations.

Boucher contends that the ALJ's decision to give Dr. Kass's opinion only limited weight, is error under *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), because that decision was predicated on the ALJ's assessment of her credibility. The court finds no error. The recognition that Boucher was not fully credible was only one part of the ALJ's discussion of Dr. Kass's opinion, and the ALJ did not completely reject that opinion. The case is therefore unlike *McGoffin*, where an ALJ had refused to consider the report of a treating physician based on the ALJ's subjective, "expressed doubt" that the physician had actually signed the report, even though – as the Court of

7

Appeals pointed out – there was additional testimony from other witnesses, that the physician agreed with the report. The court wrote:

> "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (internal quotations omitted) (emphasis added [in *McGoffin*]). Although we may not second-guess an ALJ's credibility judgments, such judgment by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record." *Id.* at 318. In this case, the ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error.

*McGoffin*, 288 F.3d at 1252. Thus, the court in *McGoffin* was addressing a case of outright rejection of a medical report, based only rank speculation as to its authorship. Here, the ALJ conducted a proper credibility analysis and reached a permissible conclusion that the claimant was less than fully credible. It was not error for the ALJ to then use this conclusion as one factor among several in reaching a secondary finding that Dr. Kass's opinion should given less than controlling weight. For example, the ALJ noted the absence of corroborative medical evidence for the recommendation that Boucher engage in only part-time work, contrasting that recommendation with the rest of Dr. Kass's report as being well supported by the objective findings and the FCE [(Functional Capacities Evaluation)]. The court has carefully reviewed each of plaintiff's various challenges to the ALJ"s assessment of Boucher's RFC, and finds no error in that assessment.

Boucher also argues that the ALJ erred in finding at step 5 that there were sufficient jobs for her in her locality, given her difficulty with driving. The evidence here established that Boucher could work as either a charge account clerk (190,390 jobs in the national economy, 2,000 in Kansas, 190 in the local region) or call out operator (79,400 such jobs in the national economy, 550 of those in Kansas, and 30 in the region). (Tr. 328). Under 20 C.F.R. § 404.1566, a claimant is not disabled

if there are a significant number of jobs she can perform in the national economy.  The court finds that plaintiff has not demonstrated error in the ALJ's step five conclusions.

     IT IS ACCORDINGLY ORDERED this 20th day of March, 2009 that the present appeal is hereby denied.

                                       s/ J. Thomas Marten  
                                       J. THOMAS MARTEN, JUDGE